UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES CROCKER, | ) | |
| Petitioner, | ) | |
| vs. | ) | No. 4:23-CV-1142-ACL |
| MICHELE BUCKNER and CATHERINE HANAWAY,[1] | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Petition of James R. Crocker for a Writ of Habeas Corpus under 28 U.S.C. § 2254.

## I. Procedural History

Crocker is currently incarcerated at the South Central Correctional Center in Licking, Missouri, pursuant to the sentence and judgment of the Circuit Court of Crawford County, Missouri. (Doc. 12-2 at 65-67.)

On February 14, 2018, after a jury trial, Crocker was found guilty of two counts of third-degree assault and one count of unlawful use of a weapon.[2] *Id.* The court sentenced him to one year imprisonment in the county jail for each assault count and four years' imprisonment in the

[1] Because Crocker seeks relief from future sentences, the Attorney General of Missouri, Catherine Hanaway, is also a proper respondent. *See* Rule 2(b) of the Rules Governing §§ 2254 and 2255 Cases.

[2] In an earlier, separate trial, Crocker was convicted of second-degree murder for related conduct arising from the same incident. The murder conviction is not at issue in the instant Petition, but was the subject of a Petition in *Crocker v. Buckner*, 4:20-CV-1417-PLC.

Missouri Department of Corrections for the unlawful use of a weapon count, to run consecutively with each other and consecutive to a sentence for second-degree murder in another case. *Id.*

In his direct appeal, Crocker argued that the trial court erred in overruling his motion to dismiss in violation of his rights to be free from double jeopardy and his right to due process. (Doc. 12-3.) On August 13, 2019, the Missouri Court of Appeals affirmed Crocker's convictions. (Doc. 12-6.)

Crocker filed a *pro se* motion for post-conviction relief under Rule 29.15. (Doc. 12-8 at 18-36.) Following the entry of appearance by counsel, an amended post-conviction relief motion was filed. *Id.* at 56-79. In his amended motion, Crocker raised the following ineffective assistance of counsel claims: (1) trial counsel failed to object to the discussion of Crocker shooting and killing Paul Dart; (2) trial counsel failed to object on the basis of foundation and the chain of custody of clothing purported to be Crocker's; (3) trial counsel failed to cross examine the eyewitnesses on whether they were interviewed as a group before they gave their written statements; (4) trial counsel failed to object to the testimony from Joseph Peart about the life saving measures he conducted on Mr. Dart; (5) trial counsel failed to investigate and call as a witness Walter Wiseman; (6) trial counsel failed to investigate and call as a witness Phil Hughes; (7) trial counsel failed to investigate and call as a witness William Kehr; and (8) trial counsel failed to object to the prosecutor repeatedly saying that Crocker shot and killed Mr. Dart. *Id.* The court denied this motion following an evidentiary hearing. *Id.* at 80-87.

In his appeal from the denial of post-conviction relief, Crocker raised the following ineffective assistance of counsel claims: (1) trial counsel failed to object to evidence Crocker shot and killed Mr. Dart; (2) trial counsel failed to make a foundational chain-of-custody objection to the admission of Crocker's purported clothing; and (3) trial counsel failed to object to the

prosecutor's closing argument references to Crocker's shooting and killing Mr. Dart as evidence of Crocker's intent to assault other persons. (Doc. 12-9.) On March 15, 2023, the Missouri Court of Appeals affirmed the decision of the motion court. (Doc. 12-12.)

Crocker filed the instant Petition on August 28, 2023, in which he raises the following grounds for relief: (1) trial counsel was ineffective for failing to object to the admission of testimony that Crocker killed Mr. Dart; (2) trial counsel was ineffective for failing to object to the foundation of clothing the police seized from Crocker; (3) trial counsel was ineffective for failing to cross-examine witnesses about whether police interviewed them as a group; (4) trial counsel was ineffective for failing to object to testimony from Joseph Peart about the life saving measures he conducted on Mr. Dart; (5) trial counsel failed to call Walter Wiseman to testify about the boundary of Crocker's property; (6) trial counsel was ineffective for failing to call Phil Hughes to testify about the boundary of Crocker's property; (7) trial counsel was ineffective for failing to call William Kehr to testify about the boundary of Crocker's property; (8) trial counsel failed to object during closing argument when the prosecutor discussed Crocker's killing of Mr. Dart; (9) trial counsel failed to investigate "Real Property Law"; (10) trial counsel failed to investigate blood swabs taken from Crocker's neck and leg; (11) trial counsel failed to investigate the weather history for the day of the charged crimes; (12) the motion court erred in denying his motion for change of judge for cause because the motion court judge was related to the prosecutor who originally charged Crocker; (13) trial counsel failed to investigate "a video of the incident that the petitioner overheard a deputy Everett talking about on the phone"; and (14) trial counsel was ineffective for failing to present evidence during the defense case. (Doc. 1-1 at 1-5.)

Respondent argues that only Grounds 1, 2, and 8, are preserved for federal habeas review, and all of Crocker's claims fail on their merits.

## II. Facts[3]

Crocker was initially charged in four separate criminal cases for events that occurred on July 20, 2013, on a gravel bar abutting the Meramec River. Crocker owned property located a few hundred feet from the gravel bar. Two couples—Paul and Loretta Dart and their friends Robert and Regina Burgess—were floating the river and pulled their canoes onto the gravel bar. Their presence angered Crocker, because he believed the gravel bar was a part of his property.

Mr. Burgess had gone to relieve himself near some vegetation when Crocker, armed with a handgun, fired a shot that struck the ground near Mr. Burgess' feet. Crocker then fired a shot in the direction of Mrs. Burgess. When Mr. Dart intervened in an attempt to de-escalate the situation, Crocker shot him in the face, dropping him instantly. Crocker then got into his car and "took off." Mr. Dart did not survive the encounter.

The first case filed charged Crocker with second-degree murder for killing Mr. Dart. That case was tried in 2014, and the jury found him guilty as charged. The trial court subsequently imposed a 25-year prison sentence.

The other cases—charging the class-D felony of unlawful use of a weapon for knowingly exhibiting a 9mm handgun in the presence of one or more persons in an angry or threatening manner, along with matching class-B felonies of first-degree assault (with accompanying unclassified felonies of armed criminal action) for shooting at Mr. and Mrs. Burgess—were eventually consolidated at the request of the State and set for trial in early 2018.

One day before that trial was set to commence, Defendant filed "**DEFENDANT'S MOTION TO DISMISS INFORMATION IN LIEU OF INDICTMENT WITH**

[3] The Court's summary of the facts is taken from the decision of the Missouri Court of Appeals on direct appeal. (Doc. 12-6 at 2-3.)

**PREJUDICE**" ("motion to dismiss") that claimed his trial on the remaining charges was barred by the double jeopardy clauses of both the United States and Missouri Constitutions. Specifically, the motion claimed that the 2014 murder case and the instant charges were so intertwined that, should he choose to testify, the jury would hear about his conviction for shooting and killing Mr. Dart, making Defendant's "conviction on the remaining counts[] a foregone conclusion." The trial court denied the motion to dismiss, but it also ruled that if Crocker testified, he could not be cross-examined about his prior, related conviction.

The jury found Crocker guilty of unlawful use of a weapon and two counts of the lesser-included misdemeanor offenses of third-degree assault for shooting toward Mr. and Mrs. Burgess.

**III. Standard of Review**

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Supreme Court construed § 2254(d) in *Williams v. Taylor*, 529 U.S. 362 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if the state court "decides a case

differently than [the] Court has on a set of materially indistinguishable facts." *Id.* at 405. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." *Id.* Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 410. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410.

**IV. Procedural Default**

For state prisoners, a petitioner must first exhaust state remedies before presenting a claim in a federal habeas petition. 28 U.S.C. § 2254(b)(1). To exhaust state remedies, a petitioner must fairly present the "substance" of the claim to the state courts on direct appeal and in any post-conviction proceedings. *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Flieger v. Delo*, 16 F.3d 878, 885 (8th Cir. 1994). The petitioner's federal court claim must then assert the same factual and legal bases as the state court claim. *Flieger*, 16 F.3d at 885.

A petitioner's claim is procedurally defaulted when he fails to exhaust all state remedies. *Welch v. Lund*, 616 F.3d 756, 758 (8th Cir. 2010) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). In that case, the Court should not review the claim unless the petitioner can show (1) "cause and prejudice" excusing that procedural default or (2) actual innocence. *Id.* at 760. A claim is also procedurally defaulted if the petitioner actually raised the claim in state court, but the state court disposed of the claim based on a state law procedural bar. *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985).

**V. Petitioner's Claims**

**A. Preserved Claims: Grounds 1, 2, and 8**

In Grounds 1, 2, and 8, Crocker raises ineffective assistance of counsel claims that were preserved in state court. Respondent argues that this Court should deny these claims in deference to the Missouri Court of Appeals' prior decisions on the claims.

To prevail on an ineffective assistance of counsel claim, a petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. *Strickland v. Washingto*n, 466 U.S. 668, 688 (1984). *Strickland* establishes a two-pronged test where a petitioner must show both that "his counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." *Id.* at 687. In order to show deficient performance, a petitioner must show that his counsel made errors so serious that he was not operating as the counsel guaranteed by the Sixth Amendment. *Id.* There is great deference given to counsel's performance and "petitioner bears a heavy burden to overcome a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Id.* at 689. The prejudice prong requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

"Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (*quoting Cullen v. Pinholster*, 563 U.S. 170, 202 (2011)). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Furthermore, a state court's findings of fact made in the course of deciding a claim of ineffective

assistance of counsel are presumed to be correct. *Odem v. Hopkins*, 382 F.3d 846, 849 (8th Cir. 2004).

**1. Grounds 1 and 8**

In Grounds 1 and 8, Crocker argues that his counsel should have objected to testimony and closing argument that referenced the killing of Mr. Dart. Crocker raised these same claims in his post-conviction relief motion and in his appeal from the denial of post-conviction relief.

Prior to trial, Crocker filed a motion to dismiss the charges, arguing that the Double Jeopardy Clause prohibited the prosecution. (Doc. 12-1 at 31-36.) The court denied the motion, but ruled that Crocker could not be cross-examined about his prior conviction for the second-degree murder of Mr. Dart. *Id.* Crocker also filed a motion in limine to prohibit evidence about the shooting of Mr. Dart. *Id.* The trial court prohibited references to Crocker's conviction for the second-degree murder of Mr. Dart, but ruled that the State could introduce evidence that Crocker shot Mr. Dart. *Id.* The Court explained that the prosecutor could "tell the story, it's going to be part and parcel of the entire story and he's going to be allowed to tell the story, but not the story of the past trial and conviction." *Id.*

Trial counsel testified at the post-conviction evidentiary hearing. He testified that the shooting "was clearly part and parcel" with the other charges, and that the events were "one course of conduct really." (Doc. 12-7 at 12.) Counsel stated that, because the court denied his motion in limine regarding the shooting, he "had to make a decision trial strategy wise whether to continually object to something like that when the jury is going to hear it." *Id.* at 13. He further testified that, because Crocker argued self-defense, "it doesn't really matter if someone was shot and killed or not." *Id.* at 14. With regard to the prosecutor's reference to the shooting in closing argument, counsel testified that he believed it would have done "more harm than good"

to object because it "looks like we're hiding evidence and trying to cover up something that's really a harmful piece of evidence to us." *Id.* at 21.

The motion court found that objections from defense counsel would not have been meritorious, as the trial court had already ruled that references to the shooting and killing of Mr. Dart were admissible. (Doc. 12-8 at 84-85, 87.) The court additionally found that it was part of counsel's trial strategy to not make numerous objections and that objections would have done more harm than good. *Id.*

The Missouri Court of Appeals found that the motion court's decision was "supported by trial counsel's credited testimony at the evidentiary hearing." (Doc. 12-12 at 6.) The Court further noted that trial counsel "successfully secured an instruction to the jury that limited what it could do with the evidence surrounding the fatal shooting of Paul Dart." *Id.* The Court continued:

> Finally, trial counsel's strategic decisions appear to have been effective, as the jury found Movant not-guilty of both armed criminal action counts and found him guilty only of the two lesser-included offenses of third-degree assault instead of the more serious crime of first-degree assault.
>
> All of the above supports the denial of postconviction relief, but more fundamentally, Movant failed to make any attempt to demonstrate that an objection by trial counsel to evidence regarding the shooting of Paul Dart would have had any legal merit. *See Hood*, 611 S.W.3d at 868 (noting that to prevail on a claim of IAC for failing to object to evidence, the movant must show that the objection would have been meritorious).
>
> The motion court did not err, clearly or otherwise, in allowing the testimony and argument regarding the significance of Movant's fatal shooting of Paul Dart.

*Id.* at 6-7.

The decision of the Missouri Court of Appeals was not contrary to or an unreasonable application of federal law, nor was it based on an unreasonable determination of the facts. The Court found, based on counsel's credited testimony, that the decision not to object to testimony

or argument about the shooting of Mr. Dart was one of reasonable trial strategy. "We defer to the motion court's assessment of credibility." *King v. Roper*, 2005 WL 1518291, at *9; *Winfield v. Roper*, 460 F.3d 1026, 1035 (8th Cir. 2006) ("Issues of credibility are left to the discretion of the state courts."); *Pittman v. Black*, 764 F.2d 545, 546 (8th Cir. 1985) ("The federal court's role is simply to ascertain whether the state court's findings of fact have fair support in the record.").

Further, Crocker failed to demonstrate prejudice. Because the motion in limine was denied, the statements regarding the shooting were admissible and objections would not have been meritorious. Defense counsel was not ineffective for failing to make a non-meritorious objection. The Court, therefore, reasonably applied *Strickland* in rejecting Crocker's claims.

Thus, Grounds 1 and 8 are denied.

**2. Ground 2**

In Ground 2, Crocker argues that trial counsel was ineffective for failing to object to the admission of clothing the police allegedly seized from Crocker on the basis of foundation or chain of custody. He claims that the clothes shown to the jury were not his. Crocker raised this claim in his post-conviction relief motion and in his appeal from the denial of post-conviction relief.

During the trial, Detective Driskoll testified that he brought the jean shorts and t-shirt Crocker was wearing during the police interview to court. (Doc. 12-1 at 439-40.) Detective Driskoll testified that he had examined the clothing for blood stains and did not see any blood. *Id.* at 440. Crocker claimed he had been injured during the incident, but Detective Driskoll did not see any injuries when he was interviewed on the day of the crime. *Id.* The clothing items were marked as exhibits and displayed to the jury. *Id.* at 441. Detective Driskoll noted that the t-shirt was "observed in the video of" Crocker's interview. *Id.* He testified that he did not send

the clothing for a DNA sample or other forensic testing because there was "no evidence of any value" on them and "no blood on them." *Id.* at 441-42. On cross-examination, defense counsel elicited from Detective Driskoll that he did not test the clothing to determine if there was any blood on the items. *Id.* at 444.

At the evidentiary hearing on Crocker's post-conviction relief motion, defense counsel testified that he did not object to the foundation for the admission of the clothing, because he did not think such an objection would have merit. (Doc. 12-7 at 6.) He explained that he did not "want to look silly in front of the jury objecting to something when the case law clearly states that hand to hand transmission of the clothing is not necessary to prove that it is what the State claims it is." *Id.* He further testified that Crocker was wearing the clothes in the video of his police interview that was played to the jury, so it would reduce Crocker's credibility to object to the admission of the clothes. *Id.* at 14-15. Finally, counsel testified that he cross-examined Detective Driskoll regarding the fact that the police did not do any testing to determine if there was any blood on the clothing, which was more powerful in his opinion. *Id.* at 15.

The motion court denied Crocker's claim, noting that counsel conducted an effective cross-examination of Detective Driskoll regarding how the clothing was handled. (Doc. 12-8 at 85.) The Court also found that Crocker failed to show that the outcome would have been different if counsel had objected to the chain of custody of the clothing. *Id.*

The Missouri Court of Appeals held that the motion court's findings were supported by the record. The Court stated:

> Trial counsel testified that Movant's interrogation took place the same day as the events in this case, and the video of that interrogation was played for the jury. In that video, Movant was wearing the same clothing that the State offered into evidence a trial. Trial counsel testified that there was no reason to object because 'there was a video and it was played for the jury, they can see the exact

> clothing.' Trial counsel testified that making an objection under those circumstances could damage trial counsel's credibility with the jury.
>
> During trial counsel's cross-examination of a State's witness, the testifying officer admitted that the State did not perform any testing on the clothing, and trial counsel believed that such cross-examination was more powerful than trying to keep the clothing out of evidence altogether. Finally, trial counsel correctly noted that an objection to the clothing would not have been meritorious because 'the case law clearly states that hand to hand transmission of the clothing is not necessary to prove that it is what the State claims it is.' *See State v. McBenge*, 507 S.W.3d 94, 122 (Mo. App. E.D. 2016).

(Doc. 12-12 at 8.)

The decision of the Missouri Court of Appeals was not contrary to or an unreasonable application of federal law, nor was it based on an unreasonable determination of the facts. The Court reasonably applied *Strickland* and found that trial counsel's performance was not deficient, as he chose to effectively cross-examine Detective Driskoll regarding the clothing instead of object on the basis of foundation or chain of custody.

Further, the Court found that counsel's belief that an objection would not be meritorious was correct based on Missouri law. It is not the role of this Court to second-guess the state court's determination about a question of Missouri law. *See Arnold v. Dormire*, 675 F.3d 1082, 1086 (8th Cir. 2012) ("We do not second-guess the decision of a Missouri state court on Missouri law."). Defense counsel was not ineffective for failing to make a non-meritorious objection.

Thus, Ground 2 is denied.

### B. Procedurally Defaulted Claims: Grounds 3, 4, 5, 6, 7, 9, 10, 11, 12, 13, and 14

Respondent argues that this Court should deny Grounds 3, 4, 5, 6, 7, 9, 10, 11, 12, 13, and 14 as procedurally defaulted, because Crocker failed to preserve these claims in State court. The undersigned agrees.

**1. Claims Raised in Post-Conviction Motion but Not on Appeal: Grounds 3, 4, 5, 6, and 7**

Crocker raised claims substantially similar to Grounds 3, 4, 5, 6, and 7 in his amended post-conviction relief motion, but failed to raise them on post-conviction appeal. *See Arnold*, 675 F.3d at 1087 (claims not raised through post-conviction appeal are procedurally defaulted). To the extent Crocker blames post-conviction appellate counsel for the default, his argument fails. *See id.* (holding any error by Missouri post-conviction appellate counsel in failing to raise claims cannot constitute cause to excuse procedural default) (citing *Martinez v. Ryan*, 566 U.S. 1, 16 (2012) ("The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings …")); *see also Shinn v. Ramirez*, 596 U.S. 366, 380 (2022) (discussing the narrowness of *Martinez*).

Thus, Grounds 3, 4, 5, 6, and 7 are denied.

**2. Claims *Not* Raised in Post-Conviction Motion: Grounds 9, 10, 11, 12, 13, and 14**

Crocker raised claims similar to Grounds 9, 10, 11, 12, 13, and 14 in his *pro se* motion for post-conviction relief, but the claims were not included in the amended motion for post-conviction relief. Respondent argues that, under Missouri's post-conviction rules, he waived Grounds 9 through 14 by not including them in his amended motion. *See* Mo. Sup. Ct. R. 29.15(h). Respondent contends that these claims are therefore procedurally barred. Respondent argues that, assuming Crocker seeks to excuse his procedural default under *Martinez*, *Martinez* cannot excuse the default.

Crocker argues that post-conviction counsel ignored his request to include all of his claims in the amended motion. He contends that he tried to raise the claims, "but was not allow[ed] to by his ineffective attorney." (Doc. 13 at 21.)

Generally, "[a]ttorney ignorance or inadvertence is not cause because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error." *Coleman,* 501 U.S. 722, 753 (1991). A narrow exception exists where "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding … counsel in that proceeding was ineffective." *Martinez*, 566 U.S. at 17. To qualify under *Martinez*, a habeas petitioner must demonstrate that his defaulted claims of ineffective assistance of trial counsel are "substantial" or have at least "some merit," and that post-conviction counsel was ineffective under the standards established in *Strickland*. *See Martinez*, 566 U.S. at 14; *Harris v. Wallace*, 984 F.3d 641, 648-49 (8th Cir. 2021). To establish prejudice, Crocker must show "not merely that the errors at … trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. 478, 494 (1986) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

Here, Crocker does not demonstrate prejudice under *Strickland*, as his under-developed arguments fail to show that trial counsel's performance was unreasonable or impacted the jury's findings in light of the evidence adduced at trial. *See Strickland*, 466 U.S. at 669 (To demonstrate ineffective assistance, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."); *Neels v. Fluke*, 109 F.4th 1021, 1031 (8th Cir. 2024) (holding that a presumption of prejudice under *Strickland* applies where "defendant establishes a constructive denial of counsel"; otherwise, Petitioner bears the burden to "affirmatively prove prejudice").

As discussed below, Crocker's claims are meritless on the state court record. As such, there is no basis to excuse his procedural default of Grounds 9, 10, 11, 12, 13, and 14.

**Ground 9**

In Ground 9, Crocker argues that trial counsel "failed to investigate Real Property Law that showed that because of accretion the property in question did belong to Mr. Crocker…" (Doc. 1-1 at 3.) He contends that Missouri's "right to use force law," Mo. Rev. Stat. § 563.031, therefore would have applied.

As an initial matter, Crocker fails to identify the specific "Real Property Law" that counsel should have researched, and cites no statute or case in support of this claim. Second, trial counsel's testimony at the evidentiary hearing on Crocker's post-conviction motion reveals that he considered Crocker's argument about the property line and made the strategic decision not to present it. (Doc. 12-7 at 19.) Counsel testified that he did not believe that it would have made any difference in the case, as the real issue was whether Crocker acted in self-defense and whether his actions were reasonable under the circumstances. *Id.* Third, the county surveyor testified at trial that the sandbar where the incident occurred was *not* part of Crocker's property. (Doc. 12-1 at 489.) As such, even if the property law to which Crocker refers would have allowed Crocker to win a suit for the property at issue, it would not change the fact that he did not own the property *at the time of the offenses*. It would not, therefore, provide him with a defense to the charges at trial.

Thus, Ground 9 lacks merit.

**Ground 10**

In Ground 10, Crocker argues that trial counsel failed to "investigate the blood swabs" that were taken off of Crocker's neck and leg "that would have shown that the prosecutor used

false testimony to get a conviction." (Doc. 1-1 at 3.) Crocker contends that these swabs would have been positive for his own blood, and would have shown that he had an injury at the time of his interview with police. *Id.*

First, the record is silent as to whether blood swabs were actually taken from Crocker, whether they were tested, and the results of any such testing.

Second, Crocker's testimony at his post-conviction evidentiary hearing suggests that testing of the blood swabs would not have been favorable to the defense. Crocker testified that he told his neighbor that any blood on Crocker or his clothing was not his own blood. (Doc. 12-7 at 36.) Crocker also acknowledged that he told jail staff that any blood was not his own and that he did not require help or medical assistance. *Id.* at 37. Additionally, Officer Hanner testified at trial that he physically checked Crocker's head and did not find any lumps or injuries. *Id.*

Third, the record reveals that Crocker asked to address the trial court on the second day of trial and complained that, among other things, counsel had failed to secure DNA testing of the blood swabs. (Doc. 12-1 at 368-69.) Although counsel did not address the blood swabs specifically, he testified that he had filed a motion for discovery and had obtained all of the discovery to the best of his ability. *Id.* at 372. He further testified that his decisions with regard to all of Crocker's complaints were ones of trial strategy. *Id.* at 373.

In sum, Crocker's speculative claim cannot overcome the strong presumption that trial counsel's performance was reasonable, or show that counsel's failure to investigate the alleged blood swabs impacted the jury's findings in light of the evidence adduced at trial. Thus, Ground 10 lacks merit.

**Ground 11**

In Ground 11, Crocker argues that trial counsel failed to "investigate the weather history for the day of the incident to show that the witnesses gave false testimony when they testified that it was storming, thunder and lightning." (Doc. 1-1 at 4.)

On the second day of trial, Crocker complained about counsel's failure to cross-examine witnesses about the weather on the day of the offenses. (Doc. 12-1 at 369.) Counsel did not specifically address Crocker's complaint about the weather, but he did testify that his reasons for acting were ones of trial strategy. *Id.* at 371-73.

Because Crocker did not develop this claim in State court, the precise reason counsel did not investigate weather data is unknown. Crocker's speculation is not sufficient to overcome the strong presumption that counsel acted reasonably, according to his trial strategy. Further, Crocker cannot demonstrate a reasonable probability that counsel's failure to investigate this ancillary issue would have changed the outcome of his trial.

Thus, Ground 11 lacks merit.

**Ground 12**

In Ground 12, Crocker argues that the post-conviction motion judge had a conflict of interest, as she "refused to recuse herself because she was related to []Mr. Seay, the prosecutor that originally charged the petitioner." (Doc. 1-1 at 4.) He contends that the motion judge denied his motion for recusal, even though she should have recused herself "to prevent any appearance of bias." *Id.*

To the extent Crocker contends his custody is unlawful because the Rule 29.15 judge was biased, the Court notes that a claimed defect in post-conviction proceedings fails to state a

cognizable federal ground under 28 U.S.C. § 2254. *Bell–Bey v. Roper*, 499 F.3d 752, 756 (8th Cir. 2007).

Thus, Ground 12 lacks merit.

**Ground 13**

In Ground 13, Crocker argues that trial counsel failed to investigate "a video of the incident that the petitioner overheard a deputy Everett talking about on the phone…" (Doc. 1-1 at 4.)

Crocker made this same complaint to the trial judge on the second day of trial. The following colloquy occurred:

> THE COURT: Okay you believe that there is a video of the incident?
>
> DEFENDANT: Yes there is.
>
> THE COURT: Taken by?
>
> DEFENDANT: I do not know by whom the only thing I know about it was I overheard Deputy Everett that was working for Crawford County at the time or works for Crawford County. He was on the telephone saying they had the video and the witnesses there at the jailhouse.

(Doc. 12-1 at 370.) Trial counsel responded by stating that he had "received voluminous discovery form the state[,] judge[,] and I have no reason to believe that there is a video tape of the incident at all from anyone. That's never surfaced anywhere." *Id.* at 371. Counsel further stated that he had reviewed the file from Crocker's murder case, and the attorneys in that case had filed motions for discovery. *Id.* at 372. He stated that he had "obtained all of the discovery from the prosecutor that I know of" and "done everything to secure all of that discovery to the best of my ability." *Id.*

The record refutes Crocker's claim that counsel failed to investigate a videotape of the incident at issue. Instead, it shows that counsel engaged in discovery and found no indication

that such a videotape existed. Crocker has not met his burden to show counsel acted unreasonably, or that he was prejudiced.

Thus, Ground 13 lacks merit.

**Ground 14**

In his final claim, Crocker argues that trial counsel "failed to put on any defense at all." (Doc. 1-1 at 4.) He contends that the "only thing he did was to cross examine the state witnesses." *Id.* As "supporting facts" for this claim, Crocker makes additional allegations, including ones duplicative of claims raised previously in his Petition. *Id.* at 4-5. The claims that are not duplicative are as follows: counsel should have presented expert witness testimony to show that bruises on Regina Burgess were not caused by a gunshot; and counsel should have filed a motion to suppress the video interview of Crocker because he was not of sound mind while he was being interviewed due to suffering from a concussion. *Id.*

With regard to the bruises, after vigorous cross-examination, Ms. Burgess testified that she sustained bruises as a result of the incident, but she did not know if the bruising was caused by being grazed by the bullet or by being hit by gravel flying up after the shots were fired. (Doc. 12-1 at 245.) She testified that she just knew that she did not have the bruises before Crocker shot at her. *Id.* Crocker has not met his burden to show that counsel acted unreasonably in cross-examining the victim on this subject rather than obtaining expert testimony concerning bruises. Additionally, Crocker has not shown that expert testimony would have aided his defense. Thus, this claim lacks merit.

Concerning Crocker's claim that counsel should have filed a motion to suppress his video interview, he has failed to identify any evidence in support of his claim that he had sustained a head injury that affected his ability to provide a statement. Instead, as previously discussed, the

record shows that Crocker denied needing medical attention and that police checked Crocker for injuries and did not find any. (Doc. 12-7 at 37.) Thus, this claim for relief (Ground 14) lacks merit.

**VI. Certificate of Appealability**

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. *See* 28 U.S.C. §2253(c)(2); *Hunter v. Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). In this case, Crocker has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, no Certificate of Appealability shall be issued.

**ORDER**

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 be **denied** and be **dismissed with prejudice** by separate judgment entered this date.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Petitioner be denied a Certificate of Appealability if Petitioner seeks to appeal this Judgment of Dismissal.

So ordered this 9th day of October, 2026.

/s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE